FILED
FEB 2 6 2007
02-26-07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CRESTVIEW CAPITAL PARTNERS, LLC and STEWART R. FLINK,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) 07CV1090<br>) JUDGE MORAN<br>) MAG. JUDGE VALDEZ<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

### SUMMARY

1. This matter involves materially false representations by Crestview Capital Partners, LLC ("Crestview"), a hedge fund advisory firm, and Stewart R. Flink, a Crestview managing member, regarding short sales preceding two registered direct offerings. Registered direct offerings generally are characterized as privately negotiated sales of securities by public companies pursuant to an effective shelf registration statement. These offerings usually are sold to a select number of institutional and accredited investors, often at a discount.

2. Crestview-managed hedge funds ("Crestview funds") agreed to invest in registered direct offerings by Introgen Therapeutics, Inc. ("Introgen") in November/December 2003 and by Targeted Genetics Corporation ("Targeted Genetics") in January/February 2004.

3. In connection with the investments by Crestview funds in the Introgen and Targeted Genetics registered direct offerings, Crestview and Flink knowingly or recklessly made materially false representations to Introgen and Targeted Genetics in the offering documentation

that Crestview funds had not shorted Introgen and Targeted Genetics stock respectively in the ten trading days preceding the signing of the documentation (hereafter "the 'no short sales' representations").

4. By conduct detailed in this Complaint, Crestview and Flink violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5].

## JURSIDICTION AND VENUE

5. The Court has jurisdiction over this action under Sections 21 and 27 of the Exchange Act [15 U.S.C. §§78u and 78aa].

6. In connection with the acts, practices and courses of business alleged herein, Crestview and Flink made use of: (a) the means and instrumentalities of interstate commerce; and/or (b) the mails.

7. Venue is proper in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. §78aa].

## DEFENDANTS

8. Crestview Capital Partners, LLC ("Crestview"), a limited liability company organized under the laws of the State of Illinois, is an investment advisory firm headquartered in Northbrook, Illinois. Crestview is the investment adviser for three hedge funds, which combined have approximately $225 million in assets.

9. Stewart R. Flink ("Flink") is a resident of Deerfield, Illinois. Flink co-founded Crestview in 2000 and has been a Crestview managing member from its inception until the present.

## OTHER ENTITIES

10. Introgen Therapeutics, Inc. ("Introgen"), headquartered in Austin, Texas, develops gene therapy products to fight cancer by restoring or correcting missing or aberrant gene functions. During the relevant time period, Introgen's common stock was registered pursuant to Section 12(g) of the Exchange Act and was traded on the NASDAQ National Market System. In November/December 2003, Introgen engaged in a $20 million registered direct offering in which Crestview funds invested.

11. Targeted Genetics Corporation ("Targeted Genetics"), headquartered in Seattle, Washington, develops gene therapy products and technologies for treating acquired and inherited diseases. During the relevant time period, Targeted Genetics' common stock was registered pursuant to Section 12(g) of the Exchange Act and was traded on the NASDAQ National Market System. In January/February 2004, Targeted Genetics engaged in a $24 million registered direct offering in which Crestview funds invested.

## STATEMENT OF FACTS

12. Registered direct offerings generally are characterized as privately negotiated sales of securities by public companies pursuant to an effective shelf registration statement. These offerings usually are sold to a select number of institutional and accredited investors, often at a discount. Investors in these offerings normally receive unrestricted securities because the issuers already have an effective shelf registration statement with respect to the sale of the securities and typically file updated prospectuses before the closing of the offering. The offerings are generally not announced publicly until the issuers and investors have executed the final offering documentation. Issuers in registered direct offerings generally use investment banking firms, called "placement agents," to market their offerings to potential investors.

13. "Short selling" includes the practice of borrowing shares of stock from a broker and selling them without owning the shares, in the hope or expectation that the share price will fall, enabling the seller to "cover the short" by returning to the broker shares of stock the seller subsequently purchases at a lower price.

14. In early November 2003, Introgen retained a placement agent to market a $20 million registered direct offering. On November 19th, the placement agent first contacted Flink to determine whether Crestview funds were interested in investing in the offering.

15. At the time of the Introgen registered direct offering and of the Targeted Genetics registered direct offering discussed below, Flink relied on Crestview's trading strategist, who was also a Crestview managing member, to determine the exact timing, amount and price of any short sales in connection with registered direct offerings and to execute the short sales because Flink did not have sufficient time to perform these activities himself due to his demanding schedule and because the trading strategist had more expertise regarding short sales and hedging. Nonetheless, Crestview's trading strategist operated under Flink's direction, and his business practice was to notify Flink on a daily basis of any Crestview fund short sales.

16. Shortly after being initially contacted regarding the Introgen registered direct offering, Flink advised Crestview's trading strategist about Crestview funds' potential investment in the offering and provided him with general parameters for short sales by Crestview funds of Introgen stock in advance of the closing of the offering. Crestview's trading strategist began shorting Introgen stock in Crestview fund brokerage accounts ("Crestview fund accounts") on November 20th.

17. Flink directed the short sales of Introgen stock to hedge the risk associated with Crestview funds investing in the registered direct offering and to capture the difference between

4

the market price at which Crestview funds could short sell Introgen stock and the discounted price at which Crestview funds expected to receive Introgen stock in the offering. Flink directed the short sales of Targeted Genetics stock, discussed below, for the same reasons.

18. After reviewing Introgen market research reports and having another conversation with the placement agent regarding the offering, Flink advised the placement agent on November 25th that Crestview funds were interested in investing approximately $1.1 million in the offering. Later that day, Flink received a copy of the offering documentation, which included a draft subscription agreement to be executed by Introgen and each investor. The subscription agreement included the following representation to be made by investors in the offering:

> "The Investor represents, warrants and agrees that it has not engaged in any short selling of the Company's securities . . . within the past ten (10) trading days."

19. Flink, on behalf of the Crestview funds, signed and faxed to the placement agent the final version of the subscription agreement, which included the above-referenced "no short sales" representation, after the markets closed on November 25th. However, between November 20th and November 25th, Crestview funds had shorted 108,218 shares of Introgen stock. Crestview's trading strategist's business practice was to notify Flink on a daily basis between November 20th and November 25th about Crestview funds' short sales of Introgen stock. Neither Flink nor any other Crestview representative ever disclosed the short sales to representatives of Introgen or the placement agent.

20. Introgen management considered the "no short sales" representation to be particularly important and would have refused to sell securities to Crestview funds in the registered direct offering had they known about the short sales by Crestview funds.

21. On November 26, 2003, Introgen publicly announced its registered direct offering

involving the sale of 2.86 million shares of common stock at $7 per share, an 8% discount to the stock's closing price the trading day before. The offering caused an increase in the number of Introgen shares outstanding and had a dilutive effect with respect to each previously outstanding share of Introgen stock. Crestview funds purchased 192,857 shares of Introgen stock in the offering for a total investment of $1.4 million. Introgen stock closed at $6.99 per share on November 26th, an 8% decrease from the closing price the prior business day.

22. In mid-January 2004, Targeted Genetics retained a placement agent to market a $20 million registered direct offering. On January 27th, the placement agent first contacted Flink to determine whether Crestview funds were interested in investing in the offering. Shortly thereafter, Flink advised Crestview's trading strategist about Crestview funds' potential investment in the offering and provided him with general parameters for short sales by Crestview funds of Targeted Genetics stock in advance of the closing of the offering. Crestview's trading strategist began shorting Targeted Genetics stock in Crestview fund accounts on January 27th.

23. After a conference call with Targeted Genetics' management and another conversation with the placement agent regarding the offering, Flink advised the placement agent on January 29th that Crestview was interested in investing in the offering. Later that day, Flink received a copy of the offering documentation, which included a draft subscription agreement to be executed by Targeted Genetics and each investor. The subscription agreement included the following representation to be made by investors:

> "The Investor represents, warrants and agrees that it has not engaged in any short selling of the Company's securities . . . within the past ten (10) trading days."

24. Flink, on behalf of the Crestview funds, signed and faxed to the placement agent the final version of the subscription agreement, which included the above-referenced "no short

sales" representation, after the markets closed on January 30, 2004. However, between January 27th and January 30th, Crestview funds had shorted 255,000 shares of Targeted Genetics stock. Crestview's trading strategist's business practice was to notify Flink on a daily basis between January 27th and January 30th about Crestview funds' short sales of Targeted Genetics stock. Neither Flink nor any other Crestview representative ever disclosed the short sales to representatives of Targeted Genetics or the placement agent.

25. Targeted Genetics' management considered the "no short sales" representation to be particularly important and would have refused to sell securities to Crestview funds in the registered direct offering had they known about the short sales by Crestview funds.

26. On February 2, 2004, Targeted Genetics publicly announced its registered direct offering involving the sale of 10.9 million shares of common stock at $2.35 per share, an 8% discount to the stock's closing price the trading day before. The offering caused an increase in the number of Targeted Genetics shares outstanding and had a dilutive effect with respect to each previously outstanding share of Targeted Genetics stock. Crestview funds purchased 531,915 shares of Targeted Genetics stock in the offering for a total investment of $1.25 million. Targeted Genetics stock closed at $2.41 per share on February 2nd, a 5.5% decrease from the closing price the prior business day.

27. At all times described herein, Flink, as a managing member of Crestview, had full authority on behalf of Crestview to negotiate the investments by Crestview funds in the Targeted Genetics and Introgen registered direct offerings and to direct Crestview funds' short sales in connection with those offerings.

28. In connection with the investments by Crestview funds in the Introgen and Targeted Genetics registered direct offerings, Crestview and Flink knowingly or recklessly made

materially false representations to Introgen and Targeted Genetics in the offering documentation that Crestview funds had not shorted Introgen and Targeted Genetics stock respectively in the ten trading days preceding the signing of the documentation.

## FIRST CLAIM

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
### [15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5]

29. The Commission incorporates the allegations in Paragraphs 1 - 28 as though fully set forth in this paragraph.

30. Through the conduct described above, Crestview and Flink, by use of the means or instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities: (1) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit.

31. By reason of their actions alleged herein, Crestview and Flink violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5].

32. Unless restrained and enjoined, Crestview and Flink are likely to continue to violate those statutory and regulatory provisions.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court issue an order:

### I.

Permanently enjoining Crestview and Flink from any future violations of Section 10(b) of

the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5];

## II.

Requiring Crestview to disgorge all profits realized from the unlawful conduct alleged herein, plus prejudgment interest;

## III.

Requiring Crestview and Flink to pay a civil penalty pursuant to Section 21(d)(3)(B)(iii) of the Exchange Act [15 U.S.C. §78u(d)(3)(B)(iii)]; and

## IV.

Granting such other relief as this Court may deem just and equitable.

Respectfully submitted,

_____
Scott B. Tandy (Illinois Bar No. 6226214)
Kent McAllister

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
175 West Jackson Boulevard, Suite 900
Chicago, IL 60604-2615
TEL: (312) 353-7390
FAX: (312) 353-3381
EMAIL: tandys@sec.gov

Dated: February 26, 2007